UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| NEAL BISSONETTE, TYLER WOJNAROWSKI,<br>    *Plaintiffs*,<br><br>v.<br><br>LEPAGE BAKERIES PARK ST., LLC, C.K. SALES CO., LLC, FLOWERS FOODS, INC.,<br>    *Defendants*. | No. 3:19-cv-00965 (KAD)<br><br><br><br><br><br><br><br>May 14, 2020 |

**MEMORANDUM OF DECISION RE:**
**DEFENDANTS' MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO COMPEL ARBITRATION AND SUPPLEMENTAL MOTION TO DISMISS (ECF NOS. 31, 41)**

Kari A. Dooley, United States District Judge:

Plaintiffs Neal Bissonnette ("Bissonette") and Tyler Wojnarowski ("Wojnarowski" and, collectively, the "Plaintiffs") brought this putative class action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), against Defendants Lepage Bakeries Park St., LLC ("Lepage"), CK Sales Co., LLC, ("CK Sales"), and Flowers Foods, Inc. ("Flowers Foods" and, collectively, the "Defendants") alleging that Defendants deliberately misclassified Plaintiffs as independent contractors in violation of Connecticut law and the FLSA. On September 18, 2019, Defendants filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) (ECF No. 31) and supporting memorandum (ECF No. 31-1) in which they urge the Court to dismiss the action, or, in the alternative, to compel arbitration, pursuant to an arbitration agreement executed by the parties. On October 9, 2019, Plaintiffs filed an opposition to the motion to dismiss (ECF No. 32) in which they argue principally that Plaintiffs cannot be compelled to arbitrate under the Federal Arbitration Act

1

("FAA") because they fall within the FAA's exemption for transportation workers. Defendants filed their reply brief on October 23, 2019 (ECF No. 35) and oral argument was held on December 5, 2019. (ECF No. 44.) The Court has also considered Plaintiffs' sur-reply (ECF No. 48) and the Defendants' response (ECF No. 49) following oral argument, as well as a notice of supplemental authority filed by the Plaintiffs on April 1, 2020. (ECF No. 50.) For the following reasons, Defendants' motion to dismiss is GRANTED.[1]

**Background**

### The Parties and Their Relationship

Defendants are in the business of producing, transporting, and selling baked goods under brand names such as Wonder Bread and Country Kitchen. (First Am. Compl., "FAC," ¶ 12, ECF No. 24.) CK Sales is a wholly-owned subsidiary of Lepage, which is a wholly-owned subsidiary of Flowers Foods. (Defs.' Mem. at 1 n.1; Rule 7.1 Disclosure Statement, ECF No. 17.)

Plaintiffs' respective companies are franchisees that each entered into a "Distribution Agreement" with CK Sales, through which they acquired certain distribution rights in exchange for monetary consideration.[2] (FAC ¶¶ 16–17; Lithicum Decl. ¶¶ 6–7, ECF No. 31-2.) In essence,

---

[1] After Defendants filed their motion to dismiss, Plaintiffs filed Opt-in Consent forms for two additional putative plaintiffs, Danny Burgos ("Burgos") and Kyle Sullivan ("Sullivan"). (ECF Nos. 34, 37.) With the Court's permission, Defendants have supplemented the motion to dismiss with the arbitration contracts executed by Burgos and Sullivan on behalf of their respective companies. (ECF Nos. 41, 41-1.) Defendants seek dismissal of the opt-in Plaintiffs' claims on the same grounds asserted in the subject motion, and this Memorandum of Decision accordingly applies to the claims of all four Plaintiffs.

[2] Neither the Plaintiffs nor the Defendants draw a distinction between the Plaintiffs and their respective companies and neither has argued that the distinction has any bearing on the issues to be decided. It is not clear to the Court that the parties are correct in this regard. The Supreme Court has never had occasion to determine whether the FAA Section 1 exemption would apply to an alleged "transportation worker" that is in fact a legal entity such as a corporation and not a person. In *New Prime Inc. v. Oliveira*, 139 S. Ct. 532 (2019), the Court held that a contract between a trucking company and an independent contractor employee was a "contract of employment" within the meaning of the FAA without acknowledging that the contract was actually with the independent contractor's LLC— an issue that was disposed of earlier in the litigation by the First Circuit Court of Appeals. *See Oliveira v. New Prime, Inc.*, 857 F.3d 7, 17 (1st Cir. 2017) (noting that because the defendant treated the contract as one between Oliveira and the trucking company instead of one between the trucking company and Oliveira's LLC the court would do the same, and concluding that "because the parties do not dispute that Oliveira is a transportation worker under § 1, we

Plaintiffs purchase Defendants' products from CK Sales and resell them to their customers at a higher price.  (*See* Lithicum Decl. ¶ 9.)  In doing so they pick up baked goods that have been delivered from one of Defendants' commercial bakeries to a local warehouse and then deliver those products to retail outlets in Connecticut, where they display the products in accord with Defendants' standards.  (FAC ¶¶ 18, 33.)  Plaintiffs allege that in an average week they spend at least forty hours delivering the Defendants' baked goods.[3]  (*Id.* ¶ 33.)  As franchisees, however, Plaintiffs are also contractually responsible for operating and growing their businesses, including by developing and maintaining customer relationships and servicing customers in their territories. (Lithicum Decl. ¶ 8.)  Though the Distribution Agreements classify Plaintiffs as independent contractors, Plaintiffs allege that they are, in fact, employees given the degree of supervision and control Defendants retain over Plaintiffs' work.  (*See* FAC ¶¶ 21–37.)

Plaintiffs brought this putative class action under the FLSA on behalf of themselves and "all individuals who have signed a distributor agreement and who personally deliver products for Defendants in the State of Connecticut."  (*Id.* ¶ 38.)  They allege that Defendants deliberately misclassified Plaintiffs as independent contractors in violation of Connecticut law and the FLSA and assert claims for unpaid or withheld wages pursuant to Conn. Gen. Stat. § 31-72 (Count I), overtime wages pursuant to Conn Gen. Stat. § 31-76C (Count II), and back wages for overtime worked, liquidated damages, and reasonable costs and attorneys' fees pursuant to the FLSA (Count

---

need not address whether an LLC or other corporate entity can itself qualify as a transportation worker.")  Likewise, because the parties agreed that Oliveira was otherwise "a worker engaged in interstate commerce" for purposes of the FAA, the issue was apparently not before the Supreme Court.  *See* 139 S. Ct. at 539 (quotation marks and alterations omitted).  This Court need not take up the issue due to its conclusion that the Plaintiffs (whether individuals or corporate entities) are not transportation workers within the scope of the exemption.

[3] Prior to becoming a franchisee, Bissonette was also employed by the Defendants as a delivery driver.  (FAC ¶ 15.)

III).  They also assert a claim for unjust enrichment (also captioned Count III, though in effect constituting Count IV).

### The Arbitration Agreements

The Distribution Agreements signed by the Plaintiffs each contain a "Mandatory and Binding Arbitration" provision that incorporates, as Exhibit K, a separate Arbitration Agreement.[4] That Arbitration Agreement provides in relevant part that claims "arising from, related to, or having any relationship or connection whatsoever with the Distributor Agreement . . . shall be submitted to and determined exclusively by binding arbitration under the Federal Arbitration Act (9 U.S.C. §§ 1, et seq.) ('FAA') in conformity with the Commercial Arbitration Rules of the American Arbitration Association . . . ." (Distributor Agreements Ex. K at 1, ECF No. 31-2 at 41, 80; ECF No. 41-1 at 38, 112.)  It expressly includes as covered claims those "alleging that DISTRIBUTOR was misclassified as an independent contractor, [and] any other claims premised upon DISTRIBUTOR's alleged status as anything other than an independent contractor . . . ." (Ex. K at 2.)  The Arbitration Agreement also contains a class action waiver which states:

> **TO THE MAXIMUM EXTENT PERMITTED BY LAW, BOTH PARTIES EXPLICITLY WAIVE ANY RIGHT TO: (1) INITIATE OR MAINTAIN ANY COVERED CLAIM ON A CLASS, COLLECTIVE, REPRESENTATIVE, OR MULTI-PLAINTIFF BASIS EITHER IN COURT OR ARBITRATION; (2) SERVE OR PARTICIPATE AS A REPRESENTATIVE OF ANY SUCH CLASS, COLLECTIVE, OR REPRESENTATIVE ACTION; (3) SERVE OR**

---

[4] For example, the Distributor Agreement executed by CK Sales and Bissonnette's company, Bissonnette Inc., provides in relevant part:

> All claims, disputes, and controversies arising out of or in any manner relating to this Agreement or any other agreement executed in connection with this Agreement, or to the performance, interpretation, application or enforcement hereof, including, but not limited to breach hereof and/or termination hereof, which has not been resolved pursuant to the negotiation and mediation provisions herein shall be submitted to binding arbitration in accordance with the terms and conditions set forth in the Arbitration Agreement attached hereto as **Exhibit K**, excepting only such claims, disputes, and controversies as specifically excluded therein.

(Distributor Agreement § 18.3, ECF No. 31-2 at 25.)  Wojnarowski's Distribution Agreement, which he executed in his capacity as President of his company, Blue Star Distributors Inc., contains substantially similar language (ECF No. 31-2 at 62), as do the Distribution Agreements executed by Sullivan on behalf of his company, KTS Distributors Inc., and Burgos on behalf of his company, Burgos Distribution Inc.  (ECF No. 41-1 at 20, 94.)

**PARTICIPATE AS A MEMBER OF ANY SUCH CLASS, COLLECTIVE, OR REPRESENTATIVE ACTION; OR (4) RECOVER ANY RELIEF FROM ANY SUCH CLASS, COLLECTIVE, REPRESENTATIVE, OR MULTI-PLAINTIFF ACTION**.

(Ex. K at 1.)  It further provides that "[a]ny issues concerning arbitrability of a particular issue or claim under this Arbitration Agreement, . . . shall be resolved by the arbitrator, not a court," with certain exceptions, including one for issues "concerning . . . the applicability of the FAA." (Ex. K at 2.)  Finally, the Arbitration Agreement contains a choice of law provision which provides that it "shall be governed by the FAA and Connecticut law to the extent Connecticut law is not inconsistent with the FAA." (Ex. K at 3.)

Relying on these provisions, Defendants argue that this action must be dismissed and alternatively seek an order compelling arbitration.  As noted previously, Plaintiffs respond that they cannot be compelled to arbitrate because they fall within the FAA's exemption for transportation workers.  They further assert that they cannot be compelled to arbitrate under Connecticut law because: (1) requiring arbitration would be "inconsistent within the FAA" and thus violate the Arbitration Agreement; (2) the FAA preempts Connecticut law; and (3) the class action waiver is unenforceable under Connecticut law as a matter of public policy.

**Standard of Review**

A party aggrieved by another party's failure or refusal to arbitrate may petition the district court for an order directing that arbitration commence in the manner provided for in the parties' agreement.  9 U.S.C. § 4.  In deciding whether arbitration must be compelled, the Court applies a standard comparable to that applied on a motion for summary judgment.  *See Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 113 (2d Cir. 2012) (citing *Bensadoun v. Jobe-Riat*, 316 F.3d 171,

175 (2d Cir. 2003)).[5] Thus, "[w]hile it is generally improper to consider documents not appended to the initial pleading or incorporated in that pleading by reference in the context of a Rule 12(b)(6) motion to dismiss, it is proper (and in fact necessary) to consider such extrinsic evidence when faced with a motion to compel arbitration." *Guida v. Home Sav. of Am., Inc.*, 793 F. Supp. 2d 611, 613 n.2 (E.D.N.Y. 2011) (quotation marks and citations omitted).

"[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Long v. Amway Corp.*, 306 F. Supp. 3d 601, 607 (S.D.N.Y. 2018) (quoting *Green Tree Fin. Corp.–Ala. v. Randolph*, 531 U.S. 79, 91 (2000)). "A party opposing arbitration may not satisfy this burden through 'general denials of the facts on which the right to arbitration depends'; instead, '[i]f the party seeking arbitration has substantiated the entitlement by a showing of evidentiary facts, the party opposing may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact to be tried.'" *Id.* (quoting *Oppenheimer & Co. v. Neidhardt*, 56 F.3d 352, 358 (2d Cir. 1995)).

**Discussion**

The FAA provides that "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "The FAA embodies a national

---

[5] Defendants filed a motion to dismiss pursuant to Rule 12(b)(1), which invokes a challenge to the Court's subject matter jurisdiction. "Whether the parties agreed to arbitrate the dispute, however, does not affect the Court's subject-matter jurisdiction," and "[h]ere, Plaintiff[s'] federal statutory claims clearly supply the Court with federal question jurisdiction." *Armor All/STP Prod. Co. v. TSI Prod., Inc.*, 337 F. Supp. 3d 156, 163 n.2 (D. Conn. 2018). Because Defendants specifically seek to require Plaintiffs to participate in individual arbitration, the Court applies the standard of review applicable to ruling on a motion to compel arbitration. *See Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016) (recognizing courts' authority to convert motions to dismiss into motions to compel when consistent with the relief sought by the moving party); *see also Lobban v. Cromwell Towers Apartments, Ltd. P'ship*, 345 F. Supp. 3d 334, 342 (S.D.N.Y. 2018) (converting motion to dismiss into motion to compel and applying summary judgment standard where, as here, defendant sought to compel arbitration in the alternative).

policy favoring arbitration founded upon a desire to preserve the parties' ability to agree to arbitrate, rather than litigate, their disputes." *Doctor's Assocs., Inc. v. Alemayehu*, 934 F.3d 245, 250 (2d Cir. 2019) (quotation marks, alteration and citation omitted). As relevant here, however, the FAA does not apply to "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1.

The threshold question in this case is whether Plaintiffs fall within the FAA Section 1 exemption such that the Arbitration Agreement cannot be enforced against them.[6] This Court must therefore decide whether Plaintiffs fall within the FAA's so-called "residual clause" encompassing the contracts of "any other class of workers engaged in foreign or interstate commerce" as they contend. To start, the Supreme Court has held that this phrase is confined to transportation workers. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001). If Plaintiffs are not transportation workers within the meaning of the statute, then the motion to dismiss must be granted in favor of an order compelling arbitration.[7]

---

[6] As noted above, while the Arbitration Agreements in this case include a delegation clause requiring that questions of arbitrability be resolved by the arbitrator and not the Court, this provision excepts, *inter alia*, questions concerning "applicability of the FAA." (Ex. K at 2.) And the Supreme Court has recently clarified that even where an arbitration agreement delegates the question of arbitrability, such a provision can only be enforced in the context of a contract that is not excluded under Section 1 of the FAA. *See New Prime*, 139 S. Ct. at 537.

[7] Defendants alternatively assert that the Court need not decide the transportation worker issue because it is clear that arbitration is required under Connecticut law as an alternative to the FAA. Defendants are correct that Connecticut law does not contain an analogous transportation worker exemption, Conn. Gen. Stat. Ann. § 52-408, and they are also correct that, as a general matter, state law applies to contracts that are not governed by the FAA, *see, e.g.*, *Michel v. Parts Auth., Inc.*, No. 15-CV-5730 (ARR) (MDG), 2016 WL 5372797, at *3 (E.D.N.Y. Sept. 26, 2016). Here, however, the parties' Arbitration Agreement not only states that covered claims "shall be submitted to and determined exclusively by binding arbitration under the Federal Arbitration Act," but it also specifically provides that the "Agreement shall be governed by the FAA and Connecticut law to the extent Connecticut law is not inconsistent with the FAA." (Ex. K at 1, 3.) Because "a district court has no authority to compel arbitration under Section 4 where Section 1 exempts the underlying contract from the FAA's provisions," *In re Van Dusen*, 654 F.3d 838, 843 (9th Cir. 2011), the Court concludes that it would be "inconsistent with the FAA" for the Court to exercise its authority under Connecticut law to compel arbitration if the Court would lack authority to do the same under the FAA. Accordingly, the threshold question of whether Plaintiffs are exempt from the FAA is one that the Court will treat as dispositive to the instant motion.

In *Circuit City* the Supreme Court confronted the question of whether the FAA's exclusion for "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce" extended to all contracts of employment, or only to those involving transportation workers, which, the Court noted, had been defined by some Courts of Appeals "as those workers 'actually engaged in the movement of goods in interstate commerce.'" 532 U.S. at 112 (quoting *Cole v. Burns Int'l Sec. Servs.*, 105 F.3d 1465, 1471 (D.C. Cir. 1997)). In adopting the latter construction, the Court invoked the *ejusdem generis* canon of statutory interpretation to hold that the residual clause must be defined by reference to the enumerated categories of "seamen" and "railroad employees" that precede it. *See id.* at 114–15. The Court also observed that in enacting the FAA, Congress likely intended to carve out an exception for those in the transportation industry in light of other existing and anticipated federal statutory remedial schemes that covered these categories of workers. *See id.* at 120–21. In *New Prime*, 139 S. Ct. 532, the Supreme Court recently clarified that the exemption for transportation workers covers independent contractors as well as employees.

The Second Circuit has observed that the transportation worker exemption applies "narrowly to encompass only 'workers involved in the transportation industries.'" *Adams v. Suozzi*, 433 F.3d 220, 226 n.5 (2d Cir. 2005) (quoting *Md. Cas. Co. v. Realty Advisory Bd. on Labor Relations*, 107 F.3d 979, 982 (2d Cir. 1997)).[8] Beyond this initial requirement, the Second

---

[8] The Defendants first argue that they are not in the transportation industry (and by extension nor are their independent contractors) because their primary businesses are the baking, selling and distribution of baked goods, not the actual, physical movement of goods through interstate commerce. While such movement is necessary to transmit their products to consumers, they argue that it is only incidental to their primary business. *See, e.g.*, *Tran v. Texan Lincoln Mercury, Inc.*, No. H-07-1815, 2007 WL 2471616, at *5 (S.D. Tex. Aug. 29, 2007) (explaining that "[u]nder Fifth Circuit precedent, a transportation worker is someone who works in the transportation industry-an industry whose mission it is to move goods," while the plaintiff "worked in the automobile industry-an industry whose mission it is to manufacture and sell automobiles" and holding that plaintiff was not a transportation worker under the FAA). Plaintiffs respond that the cases relied upon by Defendants all involved workers one or more steps removed from the actual transportation of goods in commerce, such as a car dealership employee. The Court does not decide this issue

Circuit has not yet defined the contours of who qualifies as a "transportation worker," though other courts have developed various methods of resolving the question. *See, e.g.*, *Lenz v. Yellow Transp., Inc.*, 431 F.3d 348, 352 (8th Cir. 2005) (setting forth non-exhaustive eight-factor test); *cf. Kowalewski v. Samandarov*, 590 F. Supp. 2d 477, 482 n.3 (S.D.N.Y. 2008) (declining to follow the *Lenz* factors strictly, as they were formulated in the specific context of "a worker one step removed from the actual physical delivery of goods"—*i.e.*, a customer service representative for a transportation company). A review of the case law reveals that typically those "engaged in the movement of goods in interstate commerce" fall within the statutory heartland. *Circuit City*, 532 U.S. at 112 (internal quotation marks omitted). Here, as a threshold matter, the Plaintiffs check this box given that Defendants' products are manufactured out of state (*see* Defs.' Mem. at 18 n. 10) and are delivered to warehouses in-state and ultimately to store shelves by the Plaintiffs. But the parties dispute whether Plaintiffs' role is sufficiently confined to driving, delivery, and distribution so as to make them "transportation workers" for purposes of the Section 1 exemption.

In urging the Court to hold that Plaintiffs fall within the FAA's residual clause, the Plaintiffs characterize themselves as "last mile" delivery drivers for baked goods that originate outside of the State. They argue that they are therefore akin to those intrastate drivers that courts have held fall squarely within the FAA exemption because they deliver goods that have traveled in interstate commerce.[9] *See, e.g.*, *Waithaka v. Amazon.com, Inc.*, 404 F. Supp. 3d 335, 343 (D. Mass. 2019), *appeal docketed*, No. 19-1848 (1st Cir. Aug. 30, 2019) (holding that "last mile" delivery drivers for Amazon who deliver goods solely within Massachusetts are transportation

---

in light of its determination that Plaintiffs have not established that they are transportation workers regardless of whether or not Defendants can be characterized as operating in the transportation industry.

[9] According to Jake Linthicum, Lepage's Distributor Enablement Operations Coordinator, Plaintiffs "do not cross state lines to deliver goods in connection with the operation of their business." (Linthicum Decl. ¶ 10.) This contention is not in dispute.

workers as "they are indispensable parts of Amazon's distribution system" and are "so closely related to interstate commerce as to be part of it"); *Rittmann v. Amazon.com, Inc.*, 383 F. Supp. 3d 1196, 1201 (W.D. Wash. 2019) (finding no cognizable distinction between "long haul" and "short haul" drivers who transport goods that have traveled interstate and holding that "[i]f an employer's business is centered around the interstate transport of goods and the employee's job is to transport those goods to their final destination—even if it is the last leg of the journey—that employee falls within the transportation worker exemption."); *Nieto v. Fresno Beverage Co.*, 245 Cal. Rptr. 3d 69, 76 (Cal. Ct. App. 2019), *reh'g denied* (Mar. 27, 2019), *review denied* (July 10, 2019) (applying FAA Section 1 exemption to California delivery driver who worked for beverage distributor that purchased its products nationally and internationally*); Ward v. Express Messenger Sys., Inc.*, 413 F. Supp.3d 1079, 1087 (D. Colo. 2019) (holding that Colorado drivers who delivered packages for customers that included Amazon and Staples were transportation workers where they, *inter alia*, transported and handled goods that traveled interstate despite "the absence of any indication that Plaintiffs transported goods across state lines"); *Christie v. Loomis Armored US, Inc.*, No. 10-CV-02011 (WJM) (KMT), 2011 WL 6152979, at *3 (D. Colo. Dec. 9, 2011) (determining that the plaintiff driver was a transportation worker despite failing to show that she traveled out of state where "[h]er job is to transport currency, a good that is [i]ndisputably in the stream of interstate commerce"); *see also Diaz v. Michigan Logistics Inc.*, 167 F. Supp. 3d 375, 381 n.3 (E.D.N.Y. 2016) (assuming without deciding that plaintiffs "responsible for transporting and handling automotive parts that allegedly moved in interstate commerce" were exempt even though they did not actually cross state lines).

    The Defendants assert that this line of cases, even if followed, is inapplicable in this situation. The Court agrees. Indeed, the Court does not take issue with these cases or with the

general proposition that a delivery driver responsible for transporting goods that have traveled interstate may well be a "transportation worker" for purposes of the FAA. As one court has aptly observed, "[i]f there is one area of clear common ground among the federal courts to address this question, it is that truck drivers—that is, drivers actually involved in the interstate transportation of physical goods—have been found to be 'transportation workers' for purposes of the residuary exemption in Section 1 of the FAA." *Saxon v. Sw. Airlines Co.*, No. 19-CV-0403, 2019 WL 4958247, at *4 (N.D. Ill. Oct. 8, 2019), *appeal docketed*, No. 19-3226 (7th Cir. Nov. 7, 2019) (quoting *Kowalewski*, 590 F. Supp. 2d at 482–83). Here, however, the Plaintiffs' Distributor Agreements evidence a much broader scope of responsibility that belies the claim that they are only or even principally truck drivers. Rather, because the Plaintiffs purchase and own the territories comprising their routes, their distribution efforts are the means by which they realize and increase sales and profits for their franchise businesses. (*See* Linthicum Decl. ¶ 8.) Toward that end, the Distributor Agreements do not obligate Plaintiffs "to perform any services personally," such as driving; instead, they grant Plaintiffs latitude in managing their businesses, "including hiring employees at their discretion to run their businesses."[10] (*Id.*; *see also* Distributor Agreements § 16.2.) Plaintiffs are additionally responsible for not only obtaining and insuring their own delivery vehicles (Distributor Agreement § 9.1), but also:

> identifying and engaging potential new customers; developing relationships with key customer contacts; ordering products based on customer needs; servicing the customers in their territory; stocking and replenishing product at the customer locations; removing stale product; and other activity necessary to promote sales, customer service, and otherwise operate their businesses.

---

[10] As noted above, the Supreme Court has not determined whether a corporate entity can be a "transportation worker" within the meaning of the Section 1 exemption. But where, as here, the purported "contract of employment" does not require any particular person to perform the work and allows the Plaintiff-entities to delegate the contractual obligations to one or more persons/employees, such a contractual arrangement renders it even more difficult to envision how the contracting entity could be classified a transportation worker.

(Linthicum Decl. ¶ 8.)  Plaintiffs are further required "to use their 'Best Efforts' to increase sales in their territories . . . including by asking for displays, providing good customer service, recommending new products, soliciting new accounts, and effective merchandising, among other things."  (*Id.*; *see also* Distributor Agreements § 5.1.)

Defendants thus argue persuasively that Plaintiffs are "more akin to sales workers or managers who are generally responsible for all aspects of a bakery products distribution business" than they are to "traditional transportation workers like a long-haul trucker, railroad worker, or seaman." (Defs.' Mem. at 22.)  The Defendants also cite to a somewhat comparable case where a district court held that a sales service representative ("SSR") position that involved driving and delivering the defendant's products but also included "restocking supplies, and receiving orders or facilitating sales for more supplies," did not fall within the transportation worker exception.  *Veliz v. Cintas Corp.*, No. C 03-1180 (SBA), 2004 WL 2452851, at *9 (N.D. Cal. Apr. 5, 2004), *modified on reconsideration on other grounds*, 2005 WL 1048699 (N.D. Cal. May 4, 2005).  Recognizing that the "job duties certainly entail driving" but "do not, however, entail delivery of product in the same manner that a truck driver does," the court concluded that "[t]he primary duty of SSRs is more akin to customer service than it is to a warehouse trucker, railroad employee or seamen." *Id.* at *10.

The Plaintiffs distinguish *Veliz* because Plaintiffs *do* deliver product in the same manner as a truck driver—"Plaintiffs quite literally load a truck with products and then drive the truck to deliver the products to numerous locations." (Pls.' Opp. at 12 n.6.)  But even if the movement of physical goods is the *sine qua non* of the FAA exemption, *see, e.g.*, *Kowalewski*, 590 F. Supp. 2d at 483–84, the Court is not aware of any case holding that a worker's responsibility for delivering physical goods will defeat compelling evidence that the worker performs myriad other non-

transportation related functions that fundamentally transform the nature of the job description. On this issue Plaintiffs have not put forth any evidence to refute the Defendants' submissions, which reveal that Plaintiffs' functions include not merely distribution but also customer service and sales dimensions, and which further reveal that Plaintiffs are not even contractually obligated to transport Defendants' products personally. *Cf. Hamrick v. Partsfleet, LLC*, 411 F. Supp.3d 1298, 1302 (M.D. Fla. 2019) (finding transportation worker exemption applicable where "the transportation of goods that are and have been traveling in interstate commerce is the *totality* of Plaintiffs' job") (emphasis added). While Plaintiffs argue that issues of fact preclude the granting of a motion to compel under the applicable summary judgment-like standard (Pl.s' Sur-Reply at 4), they again fail to come forward with evidence to rebut the Defendants' assertions so as to create such an issue of fact. *See Long*, 306 F. Supp. 3d at 607 ("[I]f the party seeking arbitration has substantiated the entitlement by a showing of evidentiary facts, the party opposing may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact to be tried") (quotation marks and citation omitted). Instead, Plaintiffs seek to create a factual dispute by citing Defendants' representations in this and other litigation, concerning Defendants' legal status under other statutory regimes that have no bearing on the FAA exemption.[11]

---

[11] Plaintiffs cite Defendants' Tenth Defense in their Answer to the FAC, in which they state that assuming *arguendo* that Plaintiffs are "employees" within the meaning of the FLSA, their claims are barred by the FLSA's "Motor Carrier Exception," due to the fact that Plaintiffs "drive or drove vehicles with a Gross Vehicle Rating or Gross Vehicle Weight of at least 10,001 pounds, transport or were subject to transporting certain goods originating out of state, and because there is practical continuity of movement of these goods until they reach retail customers and other customers." (ECF No. 28 at 13.) They also cite Defendants' memorandum of law in support of their motion for summary judgment in *Bokanoski et al. v. Lepage Bakeries Park Street, LLC et al.*, No. 15-CV-00021 (JCH) (ECF No. 83-1 at 8) (D. Conn. April 6, 2016), in which Defendants argued that they "are a motor carrier of property within the meaning and purview of the [Federal Aviation Administration Authorization Act of 1994] because, through their own employees and contracting with independent contractor franchises, they deliver products that remain in the stream of interstate commerce to customers in Connecticut and throughout New England." (ECF No. 48-1 at 8.) Even if the Court were to credit these representations as facts bearing on the instant litigation, they only establish that driving trucks and delivering products that travel in interstate commerce comprise some of the Plaintiffs' responsibilities, which the Court acknowledges but which does not change the outcome of the Court's analysis. Defendants also correctly observe that these statements, which were made in the context of completely different statutory frameworks,

Even allowing that Plaintiffs spend the majority of their working hours delivering products, moreover, the Court is doubtful that Plaintiffs' role as distributor franchisees is sufficiently analogous to that of early 20th century railroad workers or seamen to warrant a finding that Congress would have envisioned the FAA exception embracing such workers. *See Vargas v. Delivery Outsourcing, LLC*, No. 15-CV-03408 (JST), 2016 WL 946112, at *3 (N.D. Cal. Mar. 14, 2016) ("Section 1's exemption was intended to reach workers who would, by virtue of a strike, 'interrupt the free flow of goods to third parties in the same way that a seamen's strike or railroad employee's strike would.'") (quoting *Veliz*, 2004 WL 2452851, at *3); *Lenz*, 431 F.3d at 352 (considering "whether a strike by the employee would disrupt interstate commerce" as one of the factors to be weighed in applying the transportation worker exemption). Plaintiffs argue that their failure to deliver Defendants' baked goods to Connecticut outlets as the result of a strike would cause "a ripple effect in interstate commerce," quoting *Rittman*, 383 F. Supp. 3d. at 1201 (Pls.' Opp. at 16), but Plaintiffs present no evidence to indicate that the effects of such a strike would be felt outside of their individual franchise territories within Connecticut. The fact that Plaintiffs' contracts expressly contemplate delegation of delivery work and all manner of Plaintiffs' business operations, moreover, undercuts the suggestion that Plaintiffs are personally indispensable to the flow of goods in a manner akin to a traditional truck driver, or that Plaintiffs

---

in no way constitute "judicial admissions" "that Plaintiffs are within 'a class of workers engaged in foreign or interstate commerce' under the FAA." (Defs.' Response to Sur-Reply at 2, ECF No. 49.)  *See, e.g.*, *Freeman v. Easy Mobile Labs, Inc.*, No. 1:16-CV-00018 (GNS), 2016 WL 4479545, at *2 n.2 (W.D. Ky. Aug. 24, 2016) (finding the Motor Carrier Act exemption to the FLSA "irrelevant" with respect to "the issue of whether [the plaintiff] is excepted from arbitration under Section 1 of the FAA").

Plaintiffs also attach as an exhibit to their sur-reply a photograph of Plaintiff Bissonnette's truck, which is registered under Defendant Lepage's name and contains a federal Department of Transportation identification number, as evidence that "Plaintiffs are undoubtedly working for a 'transportation company' when they perform deliveries for Lepage, because only an entity that operates commercial vehicles hauling cargo in interstate commerce must obtain a federal DOT number." (Pls.' Sur-Reply at 3 n.4.)  Again, however, while this evidence may support the notion that some part of Plaintiffs' work involves delivering goods in interstate commerce, it fails to overcome or even address the other evidence put forth by the Defendants.

are "so closely related to interstate commerce as to be part of it." *Waithaka*, 404 F. Supp.3d at 343.

Finally, the Court is mindful that the FAA exemption must be construed narrowly. *See Circuit City*, 532 U.S. at 118; *see also, e.g.*, *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018) (citing the "liberal federal policy favoring arbitration agreements") (quotation marks and citation omitted). To extend Section 1 of the FAA to those in Plaintiffs' shoes on the current record would do the precise opposite. The Court therefore holds that Plaintiffs are not transportation workers under FAA Section 1 and that they accordingly must be compelled to arbitrate their claims pursuant to the Arbitration Agreement incorporated in their Distributor Agreements.

**Conclusion**

Because the Plaintiffs are not transportation workers under the FAA and because the parties do not otherwise dispute that they entered into a binding arbitration agreement, the Court GRANTS the Defendants' motion to dismiss in favor of arbitration. The Clerk of Court shall enter judgment in favor of the Defendants accordingly and is instructed to close the case. If, after the arbitration, any party seeks further relief from the Court, the Clerk of the Court shall direct assign any such motion or petition to the undersigned.

**SO ORDERED** at Bridgeport, Connecticut, this 14th day of May 2020.

> */s/ Kari A. Dooley*
> KARI A. DOOLEY
> UNITED STATES DISTRICT JUDGE